## UNITED STATES v. BISHOP.
### No. 7263.

Circuit Court of Appeals, Sixth Circuit.
May 5, 1937.

T. E. Walsh, of Washington, D. C. (A. O. Denning, of Nashville, Tenn., and Will G. Beardslee, Wilbur C. Pickett, and Keith L. Seegmiller, all of Washington, D. C., on the brief), for the United States.

R. S. Hopkins, of Columbia, Tenn., and Lewis Tillman, of Nashville, Tenn., for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from a judgment in favor of appellee in an action on a War Risk Insurance policy. Two questions are presented: (1) Whether it is reversible error to permit counsel, who formerly represented in certain matters an interest adverse to his client, to render professional services in the same matters on behalf of his client, and (2) whether there is substantial evidence to support the judgment.

The case has been tried twice to a jury. After the first trial a verdict in favor of appellee was set aside by the court. Counsel for appellant at the first trial acted as counsel for appellee when the case came on for the second trial. Appellant's motion to exclude counsel for appellee, upon the ground that he had previously represented the Government in the same case, was denied.

We think the denial of this motion constituted prejudicial error. Appellee urges that since his record in the Veterans' Bureau is available to him or his counsel [Third National Bank & Trust Co. v. United States, 53 F.(2d) 599 (C.C.A.6)], the error, if any, was not prejudicial. This fact does not dispose of the serious question here presented. Counsel for the Government in the first trial necessarily was possessed of confidential information not appearing in the record. The interests of the parties were adverse. It is well settled that an attorney who has acted for one party cannot render professional services in the same matters to the other party, and it makes no difference in this respect whether the relation itself has terminated, for the obligation of fidelity still continues. In re Boone (C.C.) 83 F. 944, 952. Since as held by federal courts, attempting to act for one party to a litigation after being engaged to represent the adverse litigant, and seeking to use the knowledge acquired from the first litigant for the benefit of the second, is such culpable conduct as justifies disbarment [Thatcher v. United States, 212 F. 801, 812 (C.C.A.6); In re Boone, supra], then surely appellant's motion should have been granted. While no fraudulent intent appears, the practice gave appellee an improper advantage, and the ethical objections are insuperable. We consider this error so vital that even though no other error appeared, the judgment necessarily must be reversed.

On the retrial the jury found that appellee was permanently and totally disabled on December 11, 1918. There is no illness or accident shown in the record occurring upon this date, and nothing which justifies the fixing of this particular time. In fact there is no substantial evidence to support this finding. Appellee claims to have been totally and permanently disabled by tuberculosis prior to January 31, 1919. The tuberculosis from which he now suffers was not shown to have been contracted during the life of the policy. A doctor who examined appellee in 1919 stated that he "suspected" the existence of tuberculosis, but he did not see appellee again until 1929, when he found "some definite proof of a tubercular process." A report from Dr. Stanley Teachout, made in May, 1919, is mentioned in cross-examination, but is not introduced in evidence. Assuming that it stated that at that time appellee had incipient tuberculosis, this fact does not sustain appellee's contention. Incipient tuberculosis is curable, and does not of itself constitute permanent and total disability. United States v. Sumner, 69 F.(2d) 770 (C.C. A.6). Presence of incipient tuberculosis in 1919 was negatived by the numerous official reports and X-rays made between 1919 and 1931.

Appellee's claim is completely discounted by his work record and by his conduct between 1919 and 1931. He tended stock on his father's farm until 1924. From 1924 on he worked somewhat irregularly as an oiler on machinery at a phosphate plant, receiving wages of $72 per month. In 1927 he was married. On March 30, 1928, he filed a claim for per diem expenses and stated in answer to the question "What is your present complaint?" "Chronic bronchitis; teeth are in bad shape." A neighbor hired him in 1929 to do plowing and harrowing, and this occupation continued for two months. Appellee was paid the regular wage, and left because he secured compensation from the Government. He filed this claim in 1931, and thus for many years after the policy lapsed, by the uncontradicted testimony he did not consider himself totally and permanently disabled.

Friendly neighbors testified to appellee's having coughing spells after he returned from the service. No proof of hemorrhages appears in this testimony, and the streaked sputum observed in 1929 may well be traceable to bronchitis, of which streaked sputum is a characteristic. There is no

question but that appellee, when discharged from service, was suffering from chronic bronchitis. He was at first rejected in the draft as being physically disqualified, and after being accepted on July 7, 1918, he was discharged on December 11, 1918, the board of medical officers stating that "From a careful consideration of all the evidence obtainable in the case and a critical examination of the soldier, we find that he is unfit for service as a soldier, because of bronchitis, chronic, asthma, chronic, bronchial, which, renders him unfit for the duties of a soldier, because of shortness of breath on exertion."

Appellee incurred no illness and suffered no accident in the service. Even if bronchitis and asthma were contracted during military service, they are not totally and permanently disabling. Although likely to recur at frequent intervals, they do not constitute the disability covered by the policy. Cf. United States v. Spaulding, 293 U.S. 498, 55 S.Ct. 273, 79 L.Ed. 617. No explanation is made of the delay in making a claim under the policy. In the light of these circumstances there was no substantial proof to submit to the jury that appellee was totally and permanently disabled prior to January 31, 1919.

The motion for directed verdict on behalf of the Government should have been granted. The judgment is reversed and the cause is remanded for new trial.